IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

PATRICIA JUANITA WATE, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF JAMES CLIFTON BARNES,
DECEASED,

       Plaintiff,

vs.

JOSEPH TACTUK, KENNETH KUBLER, BOB
GUALTIERI, IN HIS OFFICIAL CAPACITY AS
SHERIFF OF PINELLAS COUNTY, FLORIDA, THE
FLORIDA DEPARTMENT OF ENVIRONMENTAL
PROTECTION, and THE FLORIDA FISH AND
WILDLIFE CONVERSATION COMMISSION,

       Defendants.

CASE NO.: 14-002184
DIVISION: CI

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

       Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate

of James Clifton Barnes, deceased, sues Defendants, Joseph Tactuk, Kenneth Kubler (hereafter

collectively referred to as "The Individual Defendants"), Bob Gualtieri, in his official capacity as

Sheriff of Pinellas County, Florida (hereafter "PCSO"), The Florida Department of

Environmental Protection (hereafter "FDEP"), and The Florida Fish and Wildlife Conservation

Commission (hereafter "FWC") (hereafter "the Defendant Agencies"), and alleges.

       1.      This is an action for damages arising out of violations by Defendants of federal

law and state common law torts as detailed below, which resulted in the death of the Decedent,

James Clifton Barnes, on March 19, 2012 as a result of an incident at Honeymoon Island State

Park, #1 Causeway Boulevard, Dunedin, Florida, as further described below.

2.      This action is brought pursuant to 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, the Florida Tort Claims Act, Section 768.28, Florida Statutes, the Florida Wrongful Death Act, Sections 768.16, *et seq.*, Florida Statutes, and the common law of the State of Florida.

3.      Each and every cause of action described herein arose in Dunedin, Pinellas County, Florida, and constitutes a claim for damages in excess of Fifteen Thousand Dollars ($15,000).

## PARTIES

4.      Plaintiff, Patricia Juanita Wate, is the statutory survivor of the Decedent, James Clifton Barnes, and is the duly appointed, qualified, and acting Personal Representative of the Estate of James Clifton Barnes.

5.      Plaintiff, Patricia Juanita Wate, is a citizen of the United States and a resident of Pinellas County, Florida, and brings this action in Plaintiff's individual capacity as the survivor and beneficiary of the Decedent, James Clifton Barnes, and as the Personal Representative of the Estate of James Clifton Barnes.

6.      Plaintiff is authorized pursuant to Section 768.20, Florida Statutes, to bring this wrongful death action against the Defendants on behalf of the Decedent's Estate, and as the survivor and beneficiary of the Decedent.

7.      At the time of his death, the Decedent, James Clifton Barnes was thirty-eight (38) years of age, and at the time of his death resided in Pinellas County, Florida.

8.      At all times material hereto, Defendant, Sheriff Gualtieri, was the duly-elected Sheriff of Pinellas County, Florida, and is responsible in his official capacity for injury occasioned in connection therewith.

9.     On or about June of 2012, the Law Enforcement Division of the FDEP was transferred to the FWC, at which time Officer Tactuk was transferred to and became employed by the Law Enforcement Division of the FWC. Accordingly, the FWC is the successor in interest to the FDEP for purposes of this action.

10.     At all times material hereto, Defendant Joseph Tactuk (hereafter "Officer Tactuk") was duly appointed and acting as a law enforcement officer who was employed full-time by the Florida Department of Environmental Protection ("FDEP"), Law Enforcement Division, and/or the Florida Fish and Wildlife Conversation Commission ("FWC"). The Defendant, Officer Tactuk, is a resident of Pinellas County, Florida, and is sued individually and in his official capacity.

11.     At all times material hereto, Defendant Kenneth Kubler (hereafter "Deputy Kubler") was duly appointed and acting as a law enforcement officer and or Deputy Sheriff who was employed full-time by the PCSO. The Defendant, Deputy Kubler, is a resident of Pinellas County, Florida, and is sued individually and in his official capacity.

12.     At all times material hereto, the individual defendants were acting under color of law; to-wit, the statues, ordinances, regulations, policies, customs, and usages of the State of Florida and/or the defendant agencies and within the course and scope of their employment as law enforcement officers in the employ of the defendant agencies. Furthermore, the individual defendants were at all times material over eighteen (18) years of age, and were *sui juris.*

13.     All conditions precedent to the filing of this lawsuit has been fulfilled pursuant to Section 768.28(6) (a)-(d), Florida Statutes.

14.     On or about January 30, 2014, within two (2) years of the accrual of this cause of action, Plaintiff presented a claim in writing to the PCSO, the FDEP, the FWC, and the Florida

3

Department of Financial Services by means of a Notice of Claim, Demand for Compensation for an Injury and Demand for Compensation for Wrongful Death (hereafter "Notice of Claim"). A true and correct copy of the Notice of Claim is attached hereto as Exhibit "A," and incorporated by reference. The Notice of Claim was presented and filed in the manner prescribed by law.

15.     The PCSO, FDEP and FWC failed to make a final disposition to Plaintiff's written claim within ninety (90) days after it was filed. As a result, Plaintiff's claim is deemed denied pursuant to Section 768.28(6) (d), Florida Statutes.

16.     Plaintiff filed this action within the statutory period specified in Section 768.28(14), Florida Statutes, for filing a lawsuit against the state or one of its agencies or subdivisions after denial of the underlying claim.

17.     Plaintiff has employed the undersigned attorneys to prosecute this action and has agreed to pay said attorneys a reasonable fee for such services. Plaintiff is entitled to recover reasonable attorneys' fees for the successful prosecution of this action pursuant to 42 U.S.C. § 1983 and 42 USC § 1988.

18.   All potential beneficiaries for the wrongful death of the Decedent, James Clifton Barnes, are as follows:

> (a)     Patricia Juanita Wate, the statutory survivor of the Decedent, James Clifton Barnes; and
>
> (b)     The Estate of James Clifton Barnes.

## GENERAL ALLEGATIONS

19.   On or about March 17, 2012, James Clifton Barnes traveled to Pinellas County, Honeymoon Island, with his aunt, Paula Yount.

4

20.     Upon arrival at Honeymoon Island, Mr. Barnes and Ms. Yount were sitting on the beach and thereafter Mr. Barnes and Ms. Yount entered the water.  It was Mr. Barnes' intention to cleanse his spirit by baptizing himself in the water.  Once in the water, Mr. Barnes sat on the sea floor up to his chest and, with the assistance of Ms. Yount, submerged himself underwater several times by putting his arms over his head while sitting, swinging backward, going underwater and then returning to his sitting position.  He also shouted religious phrases during this process.

21.     During this time, Officer Tactuk, while acting within the course and scope of his employment as a law enforcement officer of the FDEP and/or FWC, arrived on the beach.  Ms. Yount left the water and spoke to Officer Tactuk and advised that Mr. Barnes was alright and was cleansing himself by self-baptism.  Ms. Yount did not inform Officer Tactuk that any physical contact between Ms. Yount and Mr. Barnes was offensive and/or nonconsensual, nor did she ask for Officer Tactuk's assistance.

22.     Officer Tactuk, nevertheless, advised Ms. Yount that Mr. Barnes must get out of the water now.

23.     Officer Tactuk then entered the water to arrest Mr. Barnes while he was still seated in the water.  In his attempt to arrest Mr. Barnes, Officer Tactuk initiated excessive force against Mr. Barnes, including but not limited to, striking him in the face with his fists, submerged Mr. Barnes in the water face down with his knee in Mr. Barnes' back, thereby depriving Mr. Barnes of oxygen, put Mr. Barnes in a choke hold, pushed Mr. Barnes face against the sea floor rocks and sprayed Mr. Barnes' face with pepper spray.

24.     At the time Officer Tactuk entered the water and initiated force against Mr. Barnes, Ms. Yount was out of the water and far away from Mr. Barnes.  Mr. Barnes posed no threat to

5

inflict harm on Ms. Yount, bystanders or law enforcement officers. Further, Ms. Yount had not informed that any physical contact between her and Mr. Barnes was nonconsensual or offensive.

25.   *Eventually, Mr. Barnes was handcuffed and dragged from the water by his legs to the water's edge. He was handcuffed in an awkward and painful way, whereby Mr. Barnes hands were cuffed together at the center of his back, with his left elbow facing down, his left hand facing up, his right elbow facing up and his right hand facing down, resembling a figure eight.* Officer Tactuk continued to apply excessive force and pain compliance methods, including but not limited to, sitting on Mr. Barnes chest resulting in chest compression and deprivation of oxygen, struck him in his face and head and then sprayed Mr. Barnes with pepper spray and/or mace.

26.   The force used by Officer Tactuk against Mr. Barnes was so excessive that bystanders urged Officer Tactuk to stop beating Mr. Barnes. Officer Tactuk responded with *threats of arrest of the bystanders.*

27.   While Officer Tactuk was applying excessive force to Mr. Barnes as described above, Deputy Kubler, while acting within the course and scope of his employment as a law enforcement officer of the PCSO, arrived on the scene via his patrol boat and proceeded to participate in and continue the use of excessive force, restraint and pain compliance methods against Mr. Barnes that had been initiated by Officer Tactuk.

28.   At this point, Mr. Barnes was having difficulty breathing, was spewing a large amount of blood from his mouth with every breath and was barely moving, yet Deputy Kubler deployed his Taser on Mr. Barnes several times, until Mr. Barnes was unconscious, not moving or breathing and was blue in color.

6

29.     Subsequent to Mr. Barnes losing consciousness and ceasing to breathe as a result of the excessive force and restraint described above while in the custody of the Individual Defendants, Officer Tactuk and Deputy Keebler failed to render emergency aid. Specifically, upon recognizing that Mr. Barnes was unable to breathe, Deputy Kubler undertook to retrieve first aid equipment from his Marine Patrol boat, which placed Mr. Barnes in a zone of risk by increasing the risk of harm to Mr. Barnes when the Individual Defendants failed to utilize available first aid equipment, and by inducing third parties who would have otherwise rendered aid to forebear from doing so. The Individual Officers failed and refused to administer any respiration assistance to Mr. Barnes, despite having a "barrier device," which allowed for efficient and safe respiration assistance of Mr. Barnes, even if he had a communicable disease.

30.     On March 19, 2012, Mr. Barnes was pronounced dead as a result of asphyxia, blunt trauma and restraint. The Individual Defendants' deliberate indifference in failing to render medical attention or aid to Mr. Barnes was a substantial contributing cause of Mr. Barnes death.

## COUNT I
### FALSE ARREST
### (AGAINST THE FDEP AND FWC)

31.     Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

32.     This is an action for false arrest under Florida law.

33.     The arrest of Mr. Barnes, as described herein, by Officer Tactuk, unlawfully detained, restrained and deprived Mr. Barnes of his liberty against his will; the detention and restriction of Mr. Barnes was unreasonable, nonconsensual, not warranted by the circumstances and intentional and unlawful in that Mr. Barnes had not committed a criminal act for which restraint was authorized.

34.   The above described conduct by Officer Tactuk constitutes a false arrest under Florida law in that he acted intentionally to directly and/or indirectly procure the restraint of Mr. Barnes against his will.

35.   The above described false arrest was conducted by Officer Tactuk while acting in the course and scope of their employment with the FDEP and FWC.

36.   Defendant FWC as the successor in interest to FDEP, and is jointly liable for the conduct at issue on part of Officer Tactuk.

37.   As a direct and proximate cause of Officer Tactuk's false arrest of Mr. Barnes, as described herein, Mr. Barnes suffered severe physical injuries that ultimately resulted in his death.

38.   The FDEP and FWC are responsible for the acts and omissions of Officer Tactuk under the Doctrine of Respondent Superior and the actions of Officer Tactuk were not committed in bad faith, with malicious purpose or in a manner exhibiting wanton and willful disregard.

39.   As a direct and proximate result of the above described conduct on the part of Officer Tactuk, the Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

40.   As a direct and proximate result of the above described conduct on the part of Officer Tactuk, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

41.   As a direct and proximate result of the above described conduct on the part of Officer Tactuk, Plaintiff has sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against FDEP and FWC for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorney's fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT II
### FALSE ARREST
### (AGAINST PCSO)

42.  Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

43.   This is an action for false arrest under Florida law.

44.   The arrest, detention and restraint of Mr. Barnes, as described herein, by Deputy Kubler unlawfully detained and deprived Mr. Barnes of his liberty against his will; the detention and restraint of Mr. Barnes was unreasonable, nonconsensual and was intentional.

45.   The above described conduct by Deputy Kubler constitutes a false arrest under Florida law in that he acted intentionally to directly and/or indirectly procure the restraint of Mr. Barnes against his will and Mr. Barnes did not commit any crime justifying use of force or restraint.

46.   The above described false arrest was conducted by Deputy Kubler while acting in the course and scope of their employment with the PCSO.

47.   As a direct and proximate cause of Deputy Kubler's false arrest of Mr. Barnes, as described herein, Mr. Barnes suffered severe physical injuries that ultimately resulted in his death.

48.   The PCSO is responsible for the acts and omissions of Deputy Kubler under the Doctrine of Respondent Superior and the actions of Deputy Kubler were not committed in bad faith, with malicious purpose or in a manner exhibiting wanton and willful disregard.

49.   As a direct and proximate result of the above described conduct on the part of Deputy Kubler, the Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

50.   As a direct and proximate result of the above described conduct on the part of Deputy Kubler, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

51.   As a direct and proximate result of the above described conduct on the part of Deputy Kubler, Plaintiff has sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against PCSO for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorney's

fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT III
### BATTERY/EXCESSIVE FORCE
### (AGAINST THE FDEP AND FWC)

52. Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 if fully set forth herein.

53. This is an action for battery under Florida law.

54. At all times material to this claim, Officer Tactuk was under a duty to refrain from utilizing excessive or inappropriate force than was necessary to affect the seizure of Mr. Barnes's person.

55. The acts and omissions of Officer Tactuk as described in this Count, Battery/Excessive Force, were not done in bad faith or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights and the safety of James Clifton Barnes. However, Officer Tactuk intentionally battered James Clifton Barnes in the course and scope of his employment with the FDEP and FWC, resulting in the death of James Clifton Barnes.

56. At the time Officer Tactuk used force against Mr. Barnes, as described above, there was no reasonable suspicion that Mr. Barnes had committed a crime involving violence or threat of violence.

57. At the time Officer Tactuk used force against Mr. Barnes, as described above, Mr. Barnes posed no immediate threat to the safety of the Individual Defendants or any other person in the immediate area.

58.    The amount of force used against Mr. Barnes by Officer Tactuk was not reasonably proportionate to the need for such force, in light of the totality of circumstances, was excessive and not an ordinary incident of the need, if any, to restrain Mr. Barnes.

59.    The force used against Mr. Barnes as described above was unauthorized, offensive and was unnecessary intentional physical contact.

60.    Defendant, FWC, is the successor in interest to Defendant, FDEP, and is jointly liable for the conduct at issue on the part of Officer Tactuk.

61.    The FDEP and FWC are responsible for the acts and omissions of Officer Tactuk under the Doctrine of Respondent Superior.

62.    As a direct and proximate result of the conduct on the part of Officer Tactuk, Decedent, James Clifton Barnes sustained severe physical injuries that ultimately resulted in his death.

63.    As a direct and proximate result of the above described conduct on the part of the Officer Tactuk, the Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

64.    As a direct and proximate result of the above described conduct on the part of Officer Tactuk, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

65.    As a direct and proximate result of the above described conduct on the part of Officer Tactuk, Plaintiff has sustained general damages in a sum to be established according to proof.

12

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against the FDEP and FWC for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, costs, interest, and such other and further relief as this Court deems just and proper.  Plaintiff further demands trial by jury on all issues so triable.

## COUNT IV
### BATTERY/EXCESSIVE FORCE
### (AGAINST THE PCSO)

66.    Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 if fully set forth herein.

67.    This is an action for battery under Florida law.

68.    At all times material to this claim, Deputy Kubler was under a duty to refrain from utilizing excessive or inappropriate force than was necessary to affect the seizure of Mr. Barnes's person.

69.    The acts and omissions of Deputy Kubler as described in this Count, battery/excessive force, were not done in bad faith or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights and safety of James Clifton Barnes. Deputy Kubler intentionally battered James Clifton Barnes, in the course and scope of his employment with the PCSO and resulted in the death of James Clifton Barnes.

70.    At the time Deputy Kubler used force against Mr. Barnes, as described above, there was no reasonable suspicion that Mr. Barnes had committed a crime involving violence or threat of violence.

13

71. At the time Deputy Kubler used force against Mr. Barnes, as described above, Mr. Barnes posed no immediate threat to the safety of the Individual Defendants or any other person in the immediate area.

72. The amount of force used against Mr. Barnes by Officer Kubler, was not reasonably proportionate to the need for such force, in light of the totality of circumstances, was excessive and not an ordinary incident of the need, if any, to restrain Mr. Barnes.

73. The force used against Mr. Barnes as described above were unauthorized, offensive, unnecessary and was intentional physical contact.

74. PCSO is responsible for the acts and omissions of Deputy Kubler under the Doctrine of Respondent Superior.

75. As a direct and proximate result of the conduct on the part of Officer Tactuk, Decedent, James Clifton Barnes sustained severe physical injuries that ultimately resulted in his death.

76. As a direct and proximate result of the above described conduct on the part of Deputy Kubler, the Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

77. As a direct and proximate result of the above described conduct on the part of Deputy Kubler, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

78.   As a direct and proximate result of the above described conduct on the part of Deputy Kubler, Plaintiff has sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against the PCSO for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, costs, interest, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT V
## COMMON LAW NEGLIGENCE
## (VICARIOUS LIABILITY - FDEP AND FWC)

79.   Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

80.   At all times material to this claim, Officer Tactuk was under a duty to use reasonable care in the use of force against Mr. Barnes. The actions of Officer Tactuk were not committed in bad faith, with malicious purpose or in a manner exhibiting wanton and willful disregard.

81.   At all times material to this claim, Officer Tactuk was working in the course and scope of his employment of FDEP and FWC.

82    Defendant, FWC, is the successor interest of Defendant, FDEP, and is jointly liable for the conduct at issue on the part of Officer Tactuk.

83.   Officer Tactuk breached his above described duty of reasonable care and was negligent by:

15

a.   Attempting to arrest, restrain, and subdue, search and seize a citizen, who posed no threat to the officers or to others, and who committed no crime;

b.   Use of excessive force to restrain and subdue a non-violent, non-dangerous individual who was not suspected of any violent criminal activity, who posed no immediate threat to law enforcement or third persons;

c.   Failure to utilize reasonable care to deescalate the encounter with Mr. Barnes to minimize the force used against him.

e.   Failure to follow FDEP and FWC procedures regarding appropriate circumstances for use of force against citizens;

f.   Failure to follow FDEP and FWC procedures regarding level of force to be used against citizens;

g.   Failure to use the skill and judgment of similarly situated, well trained law enforcement officers in the level of force used against Mr. Barnes;

h.   Creating or permitting dangers to exist to Mr. Barnes after detaining him and/or taking him into custody;

i.   Failure to administer emergency aid to Mr. Barnes upon recognizing that Mr. Barnes had stopped breathing after detaining Mr. Barnes and/or taking him into custody;

j.   Failure to use skill and judgment of a similarly well trained law enforcement officer by using force, compliance holds and

16

maneuvers creating an unnecessary risk of death or serious bodily harm to Mr. Barnes.

k.  Failure to utilize available equipment to manually respirate Mr. Barnes, after having created the need for respiration by inflicting injuries upon Mr. Barnes while restraining him;

k.  Failure to take appropriate measures to protect Mr. Barnes against the clearly excessive and deadly force used by Officer Kubler.

l.  Failure to recognize that at the time of the encounter with Mr. Barnes that he was an Emotionally Disturbed Person (EDP) and failure to take appropriate and reasonable measures to encounter Mr. Barnes without escalating violence and creating an unreasonable risk of injury or death to Mr. Barnes.

84.  The FDEP and FWC are responsible for the acts and omissions of Officer Tactuk under the Doctrine of Respondent Superior.

85.  Defendant, FWC, is the successor in interest to Defendant, FDEP, and is jointly liable for the conduct at issue on the part of Officer Tactuk.

86.  As a direct and proximate result of the negligence of Officer Tactuk as described herein, Decedent, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.

87.  As a direct and proximate result of the negligence of Officer Tactuk, as described herein, the survivor of the Decedent, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

17

88.    As a direct and proximate result of the negligence of Officer Tactuk, as described herein, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

89.    As a direct and proximate result of the negligence of Officer Tactuk as described herein, Plaintiff has sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against the FDEP and FWC for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, costs, interest, and such other and further relief as this Court deems just and proper.  Plaintiff further demands trial by jury on all issues so triable.

## COUNT VI

### COMMON LAW NEGLIGENCE
### (VICARIOUS LIABILITY - PCSO)

90.    Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

91.    At all times material to this claim, Deputy Kubler was under a duty to use reasonable care in the use of force against Mr. Barnes.  The actions of Deputy Kubler were not committed in bad faith, with malicious purpose or in a manner exhibiting wanton and willful disregard.

92.    At all times material to this claim, Deputy Kubler was working in the course and scope of his employment with PCSO.

18

93. Deputy Kubler breached the above described duty of reasonable care and was negligent by:

   a. Attempting to arrest, restrain, subdue, search and seize a citizen, who posed no threat to the officers or to others, and who had committed no crime;

   b. Use of excessive force to restrain and subdue a non-violent, non-dangerous individual who was not suspected of any violent criminal activity, who posed no immediate threat to law enforcement or third persons;

   c. Failure to utilize reasonable care to deescalate the encounter with Mr. Barnes to minimize the force used against him;

   d. Failure to follow PCSO procedures regarding appropriate circumstances for use of force against citizens;

   e. Failure to follow PCSO procedures regarding level of force to be used against citizens;

   f. Failure to use the skill and judgment of similarly situated, well trained law enforcement officers in the level of force used against Mr. Barnes;

   g. Creating or permitting dangers to exist to Mr. Barnes after detaining him and/or taking him into custody;

   h. Failure to administer emergency aid to Mr. Barnes upon recognizing Mr. Barnes had stopped breathing after detaining Mr. Barnes and/or taking him into custody;

i.     Unnecessarily deploying a Taser device against Mr. Barnes, who was improperly situated to receive jolts of electricity;

j.     Failure to utilize available equipment to manually respirate Mr. Barnes, after having created the need for respiration by inflicting injuries upon Mr. Barnes while restraining him;

k.     Failure to take appropriate measures to protect Mr. Barnes against the clearly excessive and deadly force used against by Officer Tactuk;

l.     Failure to recognize that at the time of the encounter with Mr. Barnes that he was an Emotionally Disturbed Person (EDP) and failure to take appropriate and reasonable measures to encounter Mr. Barnes without escalating violence and creating an unreasonable risk of injury or death to Mr. Barnes.

m.    Failure or abandonment of efforts to render necessary emergency aid upon recognizing that Mr. Barnes ceased breathing, and placing Mr. Barnes in a zone of risk by undertaking to retrieve first aid equipment and administer first aid, and increasing the risk of harm to Mr. Barnes by failing to use the emergency first aid equipment, and/or by inducing third parties who would have otherwise rendered aid to forebear from doing so.

94.    The PCSO is responsible for the acts and omissions of Deputy Kubler under the Doctrine of Respondent Superior.

95.   As a direct and proximate result of the negligence of Deputy Kubler, as described herein, Decedent, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.

96.   As a direct and proximate result of the negligence of Deputy Kubler, as described herein, the Plaintiff, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

97.   As a direct and proximate result of the negligence of Deputy Kubler, as described herein, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

98.   As a direct and proximate result of the negligence of Deputy Kubler as described herein, Plaintiff has sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against the FDEP and FWC for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, costs, interest, and such other and further relief as this Court deems just and proper.  Plaintiff further demands trial by jury on all issues so triable.

## COUNT VII
### COMMON LAW NEGLIGENCE – ZONE OF RISK
### (VICARIOUS LIABILITY - FDEP AND FWC)

99.   Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

100. At all times material to this claim, Officer Tactuk was under a duty to minimize the zone of risk for Mr. Barnes after he was in custody of Officer Tactuk by using all available means to stabilize Mr. Barnes pending arrival of emergency medical services.

101. The actions of Officer Tactuk as describe herein were not committed in bad faith, with malicious purpose or in a manner exhibiting wanton and willful disregard.

102. At all times material to this claim, Officer Tactuk was in the course and scope of his employment of FDEP and FWC.

103. Defendant, FWC, is the successor in interest to Defendant, FDEP, and is jointly liable for the conduct at issue on the part of Officer Tactuk.

104. Officer Tactuk breached the above described duty in one or more of the following ways:

    a. Created conditions harmful to Mr. Barnes after he was detained, could not leave the area of the detention and was in the zone of risk;

    b. Failed to administer emergency aid to Mr. Barnes upon recognizing Mr. Barnes had stopped breathing after he was detained, could not leave the area of the detention and was in the zone of risk; and

    c. Abandoned efforts to render necessary emergency aid upon recognizing that Mr. Barnes stopped breathing, after he was detained, could not leave the area of detention and was in the zone of risk;

d.      Failed or abandon efforts to render necessary emergency aid upon recognizing that Mr. Barnes ceased breathing, and placing Mr. Barnes in a zone of risk by undertaking to retrieve first aid equipment and administer first aid, and increasing the risk of harm to Mr. Barnes by failing to use the emergency first aid equipment, and/or by inducing third parties who would have otherwise rendered aid to forebear from doing so.

105.    The FDEP and FWC are responsible for the acts and omissions of Officer Tactuk under the Doctrine of Respondent Superior.

106.    As a direct and proximate result of the negligence of Officer Tactuk as described herein, Decedent, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.

107.    As a direct and proximate result of the negligence of Officer Tactuk , as described herein, the survivor of the Decedent, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

108.    As a direct and proximate result of the negligence of Officer Tactuk, as described herein, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

109.    As a direct and proximate result of the negligence of Officer Tactuk as described herein, Plaintiff has sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against the FDEP and FWC for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, costs, interest, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT VIII

## COMMON LAW NEGLIGENCE – ZONE OF RISK (VICARIOUS LIABILITY - PCSO)

110. Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

111. At all times material to this claim, Deputy Kubler was under a duty to minimize the zone of risk for Mr. Barnes after he was in custody of Deputy Kubler by using all available means to stabilize Mr. Barnes pending arrival by emergency medical services.

112. The actions of Deputy Kubler as describe herein were not committed in bad faith, with malicious purpose or in a manner exhibiting wanton and willful disregard.

113. At all times material to this claim, Deputy Kubler was in the course and scope of his employment with PCSO.

114. Deputy Kubler breached the above described duty in one or more of the follow ways:

    a.    Created conditions harmful to Mr. Barnes after he was detained, could not leave the area of the detention and was in the zone of risk;

24

b.   Failed to administer emergency aid to Mr. Barnes upon recognizing Mr. Barnes had stopped breathing after he was detained, could not leave the area of the detention and was in the zone of risk; and

c.   Abandon efforts to render necessary emergency aid upon recognizing that Mr. Barnes stopped breathing, after he was detained he could not leave the area of detention and was in the zone of risk.

d.   Failed or abandon efforts to render necessary emergency aid upon recognizing that Mr. Barnes ceased breathing, and placing Mr. Barnes in a zone of risk by undertaking to retrieve first aid equipment and administer first aid, and increasing the risk of harm to Mr. Barnes by failing to use the emergency first aid equipment, and/or by inducing third parties who would have otherwise rendered aid to forebear from doing so.

115.   PCSO is responsible for the acts and omissions of Deputy Kubler under the Doctrine of Respondent Superior.

116.   *As a direct and proximate result of the negligence of Deputy Kubler as described herein, Decedent, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.*

117.   As a direct and proximate result of the negligence of Deputy Kubler, as described herein, the survivor of the Decedent, Patricia Juanita Wate, *has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.*

25

118.   As a direct and proximate result of the negligence of Deputy Kubler, as described herein, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

119.   As a direct and proximate result of the negligence of Deputy Kubler as described herein, Plaintiff sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against PCSO for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, costs, interest, and such other and further relief as this Court deems just and proper.  Plaintiff further demands trial by jury on all issues so triable.

## COUNT IX
## COMMON LAW NEGLIGENCE
### (DIRECT LIABILITY AGAINST FDEP AND FWC)

120.   Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

121.   At all times material hereto, the FDEP and FWC were under a duty to use reasonable care in the training and supervision of their law enforcement officers.

122.   At all times material hereto the FDEP and FWC had a duty to pursuant to the Americans with Disabilities Act, 42 USC § 12182, et. seq., to properly train it officers to recognize and encounter emotionally disturbed person (EDPs).

26

123.    Defendant, FWC, is the successor in interest to Defendant, FDEP, and is jointly liable for the conduct at issue of FDEP.

124.    Despite the aforesaid duty, FDEP and FWC were negligent as follows:

a.    Failed to train their officers in proper methods of effecting stops and arrests of citizens within their jurisdiction;

b.    Failed to train their officers with regard to the proper or appropriate use of deadly force and proper level of force in restraining citizens;

c.    Failed to train their officers with regard to the proper or appropriate use of mace, pepper spray and/or Taser devices;

d.    Failed to properly discipline their officers when guilty of using excessive force on persons detained or taken into custody; creating a defacto policy, custom, or practice of hostility and use of excessive force against citizens;

e.    Failed to supervise its officers to avoid or curtail use of excessive force by these officers and other FDEP and FWC officers, creating a defacto policy, practice, or custom of excessive force against citizens;

f.    Failed to train it officers regarding the duty to render aid to persons placed in peril by force exerted by its officers to restrain such persons.

g.   Failed to discipline its officers who failed to render emergency aid to persons placed in the zone of risk by actions of its officers, thereby, encouraging deliberate indifference to serious medical needs of persons restrained by its officers;

h.   Failed to properly train its officers to recognize EDPs and to properly train its officers regarding measures and techniques to deescalate encounters with EDPs.

125.   The matters described above involved police activities that FDEP and FWC knew would be encountered by its officers and FDEP and FWC knew that failure to adequately train officers in these areas was reasonably likely to lead to death or serious injury to citizens encountering its officers.

126.   As a direct and proximate result of the negligence of FDEP and FWC as described herein, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.

127.   As a direct and proximate result of the negligence of FDEP and FWC, as described herein, the survivor of the Decedent, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

128.   As a direct and proximate result of the negligence of FDEP and FWC, as described herein, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical

or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

129.    As a direct and proximate result of the negligence of FDEP and FWC as described herein, Plaintiff has sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against the FDEP and FWC for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, costs, interest, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT X
## COMMON LAW NEGLIGENCE
## (DIRECT LIABILITY AGAINST PCSO)

130.    Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

131.    At all times material to this claim, the PCSO was under a duty to use reasonable care in the training and supervision of their law enforcement officers.

132.    At all times material hereto PCSO had a duty pursuant to the Americans with Disabilities Act, 42 USC § 12182, et. seq., to properly train it officers to recognize and encounter emotionally disturbed person (EDPs)

133.    Despite the aforesaid duty, PCSO was negligent as follows:

    a.    Failed to train their deputies in proper methods of effecting stops
          and arrests of citizens within their jurisdiction;

b.      Failed to train their officers with regard to the proper or appropriate use of deadly force and proper level of force in restraining citizens;

c.      Failed to train their officers with regard to the proper or appropriate use of mace, pepper spray and/or Taser devices;

d.      Failed to properly discipline their officers when guilty of using excessive force on persons detained or taken into custody; creating a defacto policy, custom, or practice of hostility and use of excessive force against citizens;

e.      Failed to supervise its officers to avoid or curtail use of excessive force, creating a defacto policy, practice, or custom of excessive force against citizens;

f.      Failed to institute policies, procedures or practices to facilitate timely aid rendered to victims of officer-involved deadly force;

h.      Failed to train its deputies in the proper use of emergency first aid equipment for the purpose of rendering first aid to citizens;

i.      Failed to properly train it deputies regarding the duty to render aid to persons placed in peril by the actions of its deputies or other law enforcement officers.

j.      Failed to properly train its officers to recognize EDPs and to properly train its officers regarding measures and techniques to deescalate encounters with EDPs. Thus, the failure to train its

30

officers on encounters with EDPs which resulted in deliberate indifference to the rights of EDPs to be free from excessive force during encounters with law enforcement.

k. Failed to discipline its officers who failed to render aid to persons placed in the zone of risk by actions of the officer, thereby encouraging deliberate indifference to serious medical needs of persons restrained by its officers.

134. The matters described above involved police activities that PCSO knew would be encountered by its officers and PCSO knew that failure to adequately train officers in these areas was reasonably likely to lead to death or serious injury to citizens encountering its officers.

135. As a direct and proximate result of the negligence of PSCO as described herein, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.

136. As a direct and proximate result of the negligence of PSCO , as described herein, the survivor of the Decedent, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

137. As a direct and proximate result of the negligence of PSCO, as described herein, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

138. As a direct and proximate result of the negligence of PSCO as described herein, Plaintiff has sustained general damages in a sum to be established according to proof.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against PSCO for general and special damages according to proof, including those damages recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, costs, interest, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT XI

## VIOLATION OF THE FIRST, FOURTH, FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS (AGAINST THE INDIVIDUAL DEFENDANTS)

139. Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

140. This is an action for violation of Constitutional rights under 42 U.S.C. § 1983 against the Individual Defendants.

141. While the individual defendants were acting under the authority of the State of Florida and under color of law as law enforcement officers in the employ of the defendant agencies, they subjected Decedent, James Clifton Barnes to the deprivation of the rights and privileges secured to him by the Constitution of the United States to be secure in his person from the use of excessive force/and to be free from unreasonable search and seizure of his person, under the Fourth Amendment to the United States Constitution within the meaning of 42 U.S.C. § 1983.

142. As a direct and proximate result of the excessive force used by the Individual Defendants, as described herein, the Decedent sustained severe physical injuries that ultimately resulted in his death.

143.   In the alternative to the averments in Counts 1 through 7, the actions of the individual defendants were intentional, malicious, reckless, and done without any regard for the health, safety and welfare of James Clifton Barnes.

144.   The individual defendants' actions in conducting the nonconsensual search and seizure of James Clifton Barnes's person were unreasonable, unjustified, unnecessary, and excessive to effect any lawful purpose, and constituted (1) an unreasonable search and seizure of James Clifton Barnes under the Fourth and Fourteenth Amendments to the United States Constitution, (2) a deprivation of life and liberty without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, (3) cruel and unusual punishment under the Eighth Amendment to the United States Constitution, (4) violation of James Clifton Barnes's right to freely associate with others under the First and Fourteenth Amendments to the United States Constitution.

145.   As a direct and proximate result of the above described conduct on the part of the individual defendants, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.

146.   As a direct and proximate result of the above described conduct on the part of the Individual Defendants, Patricia Juanita Wate, the survivor of the Decedent, James Clifton Barnes has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

147.   As a direct and proximate result of the above described conduct on the part of the individual defendants, the Estate of James Clifton Barnes has lost the net accumulations that the Decedent would have acquired had Decedent lived out his normal life, and has sustained medical

or funeral expenses that have become a charge against his Estate and/or the Decedent's survivor has incurred said medical and funeral expenses.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against Defendants Officer Tactuk and Deputy Kubler for compensatory damages, including those recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorney's fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT XII
### VIOLATION OF THE FIRST, FOURTH, FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS (AGAINST FDEP AND FWC)

148.    Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

149.    This is an action for violation of Constitutional rights under 42 U.S.C. § 1983 against the FDEP and FWC, for establishment of policies, procedures, customs and practices that are deliberately indifferent to the constitutional rights of persons encountered by its officers.

150.    Defendant, FWC, is the successor in interest to Defendant, FDEP, and is jointly liable for the conduct at issue of FDEP.

151.    The FDEP and FWC was at all times material hereto responsible for establishing customs, policies, and procedures to regulate the conduct of employees and officers of the FDEP and FWC, and were responsible for ensuring that employees and officers of the FDEP and FWC obeyed and acted in conformity with the laws of the State of Florida and the United States of America.

152.   The FDEP and FWC at all times material hereto had a duty pursuant to the Americans with Disabilities Act, 42 USC § 12182, et. seq., to properly train it officers to recognize and encounter emotionally disturbed person (EDPs).

153.   The FDEP and FWC were at all times material hereto aware that confrontations and/or encounters between police officers and citizens within their jurisdiction, including James Clifton Barnes, carried the potential for injury, loss of life, and other similar disastrous outcomes to such individuals.

154.   Instead of instructing, training, and disciplining its law enforcement officers in proper procedures in dealing with confrontations between law enforcement officers and citizens within their jurisdiction, the Defendant Agencies implemented and maintained customs, policies and practices that resulted in the deliberate indifference of the Individual Defendants to James Clifton Barnes's civil rights guaranteed by the United States Constitution.

155.   Specifically, the FDEP and FWC:

a.   Employed a custom of violating its own policies and procedures which resulted in the death of James Clifton Barnes by excessive deadly force and the deliberate indifference to James Clifton Barnes's serious medical needs after the use of force described herein, which deprived James Clifton Barnes of his rights secured under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution;

b.   Alternatively, failed to enact or promulgate sufficient policies or procedures to insure against James Clifton Barnes's death by use of excessive deadly force or the deliberate indifference to his

35

serious medical need after the use of excessive deadly force as described herein, which deprived James Clifton Barnes of his rights secured under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution;

c.  Failed to train their officers in proper methods of effecting stops and arrests of citizens within its jurisdiction;

d.  Failed to train their officers in proper methods of conducting consensual searches and seizures;

e.  Failed to train their officers with regard to the proper or appropriate use of mace, pepper spray and/or Taser devices;

f.  Failed to train their officers in the proper methods of implementing emergency aid and emergency aid devices, including but not limited CPR and barrier devices, and the appropriate situations to utilize emergency aid and emergency aid devices to resuscitate persons placed in peril by force exerted by law enforcement officers to achieve restraint of such person;

g.  Failed to properly discipline their officers when guilty of using excessive force on persons taken into custody;

h.  Failed to supervise its officers to avoid or curtail use of excessive force by the Individual Defendants and other FDEP and FWC officers, creating a defacto policy, practice, or custom of excessive force against citizens;

36

i.   Enacted customs and permitted practices that encouraged the use of excessive force against citizens; and

j.   Failed to discipline officers who failed to render aid to persons with serious medical needs, as a result of force exerted by law enforcement thus, encouraging deliberate indifference to the serious needs of persons taken into custody by officers;

k.   Failed to properly train its officers to recognize EDPs and to properly train its officers regarding measures and techniques to deescalate encounters with EDPs. Thus, the failure to train its officers on encounters with EDPs resulted in deliberate indifference to the rights of EDP's to be free from excessive force during encounters with law enforcement.

l.   Failed to properly train its officers to render first aid to persons placed in peril by law enforcement force exerted against such person with resulting serious medical needs.

156.   While Officer Tactuk was acting under the authority of the State of Florida and under color of law as an law enforcement officers in the employ of the FDEP and FWC, he subjected James Clifton Barnes to the deprivation of the rights and privileges secured to him by the Constitution of the United States to be secure in his person against the use of excessive force and to be free from the unreasonable search and seizure of his person under the Fourth Amendment to the United States Constitution within the meaning of 42 U.S.C. § 1983 and to be free from deliberate indifference to his serious medical needs after being taken into custody.

37

157.   As a direct and proximate result of the excessive force used by the Officer Tactuk, as described herein and his deliberate indifference to Mr. Barnes serious medical needs, James Clifton Barnes sustained severe physical injuries that ultimately resulted in his death.

158.   James Clifton Barnes's death was the reasonably foreseeable result and consequence of the FDEP's and FWC's custom of ignoring policies and procedures and/or creating policies, procedures, customs and practices that encouraged law enforcement officers to use excessive force and unreasonable seizure practices against citizens and/or their failure to enact sufficient policies and procedures regarding the use of force, and specifically and of the deliberate indifference to James Clifton Barnes's serious medical needs following the above described use of excessive deadly force.

159.   The FDEP and FWC, through their actions, policies, procedures, customs or practices described above, caused James Clifton Barnes to be subjected to the deprivation of rights, privileges, and immunities secured by the United States Constitution and the laws of the United States, including (1) the right to be secure in his person against unreasonable search and seizure as protected by the Fourth and Fourteenth Amendments to the United States Constitution, (2) the right not to be deprived of life and liberty protected by without due process of law as protected by the Fifth and Fourteenth Amendments to the United States Constitution, (3) the right not to be subjected to cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution; (4) the right to freely associate with others under the First and Fourteenth Amendments to the United States Constitution.

160.   As a direct, proximate and foreseeable result of the FDEP's and FWC's maintenance of customs, policies and practices that resulted in the deliberate indifference of FDEP and FWC to James Clifton Barnes's civil rights, and resulted in the Constitutional

violations set forth above, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.

161.    Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

162.    The Estate of James Clifton Barnes has lost the net accumulations and value of the earnings and earning capacity that the Decedent would have acquired had Decedent lived out his normal life, and the Estate of James Clifton Barnes has sustained medical or funeral expenses that have become a charge against his Estate and/or Decedent's survivor has incurred said medical and funeral expenses.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against FDEP and FWC for compensatory damages, including those recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorneys' fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT XIII

## VIOLATION OF THE FIRST, FOURTH, FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS (AGAINST PCSO)

163.    Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

164.    This is an action for violation of Constitutional rights under 42 U.S.C. § 1983 against PCSO for establishment of policies, procedures, customs and practices that are deliberately indifferent to the constitutional rights of persons encountered by its officers.

165.    The PCSO was at all times material hereto responsible for establishing customs, policies, and procedures to regulate the conduct of employees and officers of the PCSO, and were responsible for ensuring that employees and officers of the PCSO obeyed and acted in conformity with the laws of the State of Florida and the United States of America.

166.    The PCSO at all times material hereto had a duty pursuant to the Americans with Disabilities Act, 42 USC § 12182, et. seq., to properly train its officers to recognize and encounter emotionally disturbed person (EDPs).

167.    The PCSO was at all times material hereto aware that confrontations and/or encounters between police officers and citizens within their jurisdiction, including James Clifton Barnes, carried the potential for injury, loss of life, and other similar disastrous outcomes to such individuals.

168.    Instead of instructing, training, and disciplining its law enforcement officers in proper procedures dealing with confrontations between law enforcement officers and citizens within their jurisdiction, the PCSO implemented and maintained customs, policies and practices that resulted in the deliberate indifference of Deputy Kubler to James Clifton Barnes's civil rights, and violated 42 U.S.C. § 1983 guaranteed by the United States Constitution.

169.    Specifically, the PCSO:

     a.    Employed a custom of violating its own policies and procedures which resulted in the death of James Clifton Barnes by excessive deadly force and the deliberate indifference to James Clifton Barnes's serious medical needs after the use of excessive deadly force described herein, which deprived James Clifton Barnes of his

rights secured under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution;

b.  Alternatively, failed to enact or promulgate sufficient policies or procedures to insure against James Clifton Barnes's death by use of excessive deadly force or the deliberate indifference to his serious medical need after the use of excessive deadly force as described herein, which deprived James Clifton Barnes of his rights secured under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution;

c.  Failed to train their officers in proper methods of effecting stops and arrests of citizens within its jurisdiction;

d.  Failed to train their officers in proper methods of conducting non-consensual searches and seizures;

e.  Failed to train their officers with regard to the proper or appropriate use of mace, pepper spray and/or Taser devices and appropriate level of force to be used to restrain persons.

f.  Failed to train their officers in the proper methods of implementing emergency aid and emergency aid devices, including but not limited CPR and barrier devices, and the appropriate situations to utilize emergency aid and emergency aid devices to resuscitate persons placed in peril by force exerted by law enforcement to achieve restraint of such person;

41

g.   Failed to properly discipline their officers when guilty of using excessive force on persons taken into custody;

h.   Failed to supervise its officers to avoid or curtail use of excessive force by Deputy Kubler and other PCSO officers, creating a defacto policy, practice, or custom of excessive force against citizens;

i.   Failed to discipline officers who failed to render aid to persons with serious medical needs, as a result of force exerted by law enforcement thus, encouraging deliberate indifference to the serious needs of persons taken into custody by officers;

j.   Failed to properly train its officers to recognize EDPs and to properly train its officers regarding measures and techniques to deescalate encounters with EDPs. Thus, the failure to train its officers on encounters with EDPs resulted in deliberate indifference to the rights of EDP's to be free from excessive force during encounters with law enforcement.

k.   Failed to properly train its officers to render first aid to persons placed in peril by law enforcement force exerted against such person with resulting serious medical needs.

170.   While Deputy Kubler was acting under the authority of the State of Florida and under color of law as law enforcement officers in the employ of the PCSO, they subjected James Clifton Barnes to the deprivation of the rights and privileges secured to him by the Constitution of the United States to be secure in his person against the use of excessive force and to be free

from the unreasonable search and seizure of his person under the Fourth Amendment to the United States Constitution within the meaning of 42 U.S.C. § 1983 and to be free from deliberate indifference to his serious medical needs after being taken into custody.

171.   As a direct and proximate result of the excessive force used by the PCSO, as described herein and his deliberate indifference to Mr. Barnes serious medical needs, James Clifton Barnes sustained severe physical injuries that ultimately resulted in his death.

172.   James Clifton Barnes's death was the reasonably foreseeable result and consequence of the PCSO custom of ignoring policies and procedures and/or creating policies, procedures, customs and practices that encouraged law enforcement officers to use excessive force and unreasonable seizure practices against citizens and/or their failure to enact sufficient policies and procedures regarding the use of force and of the deliberate indifference to James Clifton Barnes's serious medical needs following the above described use of excessive deadly force.

173.   The PCSO, through their actions, policies, procedures, customs or practices described above, caused James Clifton Barnes to be subjected to the deprivation of rights, privileges, and immunities secured by the United States Constitution and the laws of the United States, including (1) the right to be secure in his person against unreasonable search and seizure as protected by the Fourth and Fourteenth Amendments to the United States Constitution, (2) the right not to be deprived of life and liberty protected by without due process of law as protected by the Fifth and Fourteenth Amendments to the United States Constitution, (3) the right not to be subjected to cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution; (4) the right to freely associate with others under the First and Fourteenth Amendments to the United States Constitution.

174.     As a direct, proximate and foreseeable result of the PCSO's maintenance of customs, policies and practices that resulted in the deliberate indifference PCSO to James Clifton Barnes's civil rights, and resulted in the Constitutional violations set forth above, James Clifton Barnes suffered severe physical injuries that ultimately resulted in his death.

175.     Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

176.     The Estate of James Clifton Barnes has lost the net accumulations and value of the earnings and earning capacity that the Decedent would have acquired had Decedent lived out his normal life, and the Estate of James Clifton Barnes has sustained medical or funeral expenses that have become a charge against his Estate and/or Decedent's survivor has incurred said medical and funeral expenses.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against the PCSO for compensatory damages, including those recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorneys' fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT XIV
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS/CRUEL AND UNUSUAL PUNISHMENT (AGAINST OFFICER TACTUK)

177.  Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

44

178. The actions or inactions of Officer Tactuk as stated above, amounted to deliberate indifference to the serious medical needs of Mr. Barnes and constituted Constitutional violations of Mr. Barnes' United States Constitutional rights made applicable to the States by the Fourteenth Amendment and made actionable by 42 USC § 1983.

179. The medical condition of Mr. Barnes was life threatening and serious. His inability to breath was obvious and Officer Tactuk was aware of the seriousness of Mr. Barnes medical needs.

180. Officer Tactuk knew of available life support equipment in possession of PCSO Deputy Kubler, however failed to make use of it.

181. The attention given by Officer Tactuk to Mr. Barnes was so minimal as to constitute no care at all.

182. As a direct, proximate and foreseeable result of Officer's Tactuk's deliberate indifference to the serious medical needs of Mr. Barnes, he suffered severe physical injuries that ultimately resulted in his death.

183. Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

184. The Estate of James Clifton Barnes has lost the net accumulations and value of the earnings and earning capacity that the Decedent would have acquired had Decedent lived out his normal life, and the Estate of James Clifton Barnes has sustained medical or funeral expenses that have become a charge against his Estate and/or Decedent's survivor has incurred said medical and funeral expenses.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against Officer Tactuk

for compensatory damages, including those recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorneys' fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT XV

## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS/CRUEL AND UNUSUAL PUNISHMENT (AGAINST DEPUTY KUBLER)

185.    Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

186.    The actions or inactions of Deputy Kubler as stated above, amounted to deliberate indifference to the serious medical needs of Mr. Barnes and constituted Constitutional violations of Mr. Barnes' United States Constitutional rights made applicable to the States by the Fourteenth Amendment and made actionable by 42 USC § 1983.

187.    The medical condition of Mr. Barnes was life threatening and serious. His inability to breath was obvious and Officer Kubler was aware of the seriousness of Mr. Barnes medical needs.

188.    Officer Kubler was in possession of life support equipment however failed to make use of it.

189.    The attention given by Officer Kubler to Mr. Barnes was so minimal as to constitute no care at all.

190.    As a direct, proximate and foreseeable result of Officer's Kubler's deliberate indifference to the serious medical needs of Mr. Barnes, he suffered severe physical injuries that ultimately resulted in his death.

191.    Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

192.    The Estate of James Clifton Barnes has lost the net accumulations and value of the earnings and earning capacity that the Decedent would have acquired had Decedent lived out his normal life, and the Estate of James Clifton Barnes has sustained medical or funeral expenses that have become a charge against his Estate and/or Decedent's survivor has incurred said medical and funeral expenses.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against Officer Kubler for compensatory damages, including those recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorneys' fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT XVI
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## (AGAINST PCSO)

193.    Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

194.    At all times material hereto, PCSO had a duty pursuant to the Americans with Disabilities Act, 42 USC § 12182, et. seq., to properly train its officers to recognize and encounter emotionally disturbed person (EDPs).

195.    PCSO failed to properly train its officers to recognize EDPs and to properly train its officers regarding measures and techniques to deescalate encounters with EDPs.

47

196. At all times material hereto, PCSO, was a government entity providing government services to the public it served.

197. At all times material hereto, PCSO, through its officers and employees provided services to EDPs as a result of regular and routine encounters between its officers and EDPs.

198. Beginning in the 1990's the United States Department of Justice gave notice to state and local law enforcement agencies that EDP encounters were a government service and EDP was a disability, as defined by law and which required accommodations.

199. Also, in the 1990's, the United states Department of Justice issued suggested training programs for state and local law enforcement agencies to enable law enforcement personnel to recognize a person under the influence of an emotional disturbance and utilize proven techniques to de-escalate the need for hand on force, thereby, accommodating the EDP and reducing the risk of injury or death.

200. PCSO failed to comply with the Americans with Disabilities Act, 42 USC § 12182, et. seq., in that it failed to train an adequate number of deputies for EDP, encounters to meaningfully accommodate the EDP public it served.

201. At the time of the encounter between Deputy Kubler and Mr. Barnes, Mr. Barnes was under the influence of an emotional disturbance as defined by the Americans with Disabilities Act, 42 USC § 12182, et. seq.

202. The failure of PCSO to comply with the Americans with Disabilities Act, 42 USC § 12182, et. seq., resulted in the unnecessary escalation of force used against Mr. Barnes that was the legal cause of his death.

203.    Mr. Barnes' Estate has agreed to pay a reasonable attorney's fees and is entitled to recover attorney's fees in connection with pursuing violation of the Americans with Disabilities Act, 42 USC § 12182, et. seq.

204.    Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

205.    The Estate of James Clifton Barnes has lost the net accumulations and value of the earnings and earning capacity that the Decedent would have acquired had Decedent lived out his normal life, and the Estate of James Clifton Barnes has sustained medical or funeral expenses that have become a charge against his Estate and/or Decedent's survivor has incurred said medical and funeral expenses.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against PCSO for compensatory damages, including those recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorneys' fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.

## COUNT XVII
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## (AGAINST FDEP and FWC)

206.    Plaintiff re-avers and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

207.    Defendant, FWC, is the successor in interest to Defendant, FDEP, and is jointly liable for the conduct at issue of FDEP.

49

208.   At all times material hereto, FDEP and FWC had a duty pursuant to the Americans with Disabilities Act, 42 USC § 12182, et. seq., to properly train its officers to recognize and encounter emotionally disturbed person (EDPs).

209.   FDEP and FWC failed to properly train its officers to recognize EDPs and to properly train its officers regarding measures and techniques to deescalate encounters with EDPs.

210.   At all times material hereto, FDEP and FWC, were government entities providing government services to the public it served.

211.   At all times material hereto, FDEP and FWC, through its officers and employees provided services to EDPs as a result of regular and routine encounters between its officers and EDPs.

212.   Beginning in the 1990's the United States Department of Justice gave notice to state and local law enforcement agencies that EDP encounters were a government service and EDP was a disability, as defined by law and which required accommodations.

213.   Also, in the 1990's, the United states Department of Justice issued suggested training programs for state and local law enforcement agencies to enable law enforcement personnel to recognize a person under the influence of an emotional disturbance and utilize proven techniques to de-escalate the need for hand on force, thereby, accommodating the EDP and reducing the risk of injury or death.

214.   FDEP and FWC failed to comply with the Americans with Disabilities Act, 42 USC § 12182, et. seq., in that it failed to train an adequate number of officers for EDP, encounters to meaningfully accommodate the EDP public it served.

215    At the time of the encounter between Officer Tactuk and Mr. Barnes, Mr. Barnes was under the influence of an emotional disturbance as defined by the Americans with Disabilities Act, 42 USC § 12182, et. seq.

216.    The failure of FDEP and FWC to comply with the Americans with Disabilities Act, 42 USC § 12182, et. seq. resulted in the unnecessary escalation of force used against Mr. Barnes that was the legal cause of his death.

217.    Mr. Barnes Estate has agreed to pay a reasonable attorney's fees and is entitled to recover attorney's fees in connection with pursuing violation of the Americans with Disabilities Act, 42 USC § 12182, et. seq.

218.    Decedent's survivor, Patricia Juanita Wate, has experienced in the past and will continue to experience in the future, mental pain and suffering as a result of her son's death.

219.    The Estate of James Clifton Barnes has lost the net accumulations and value of the earnings and earning capacity that the Decedent would have acquired had Decedent lived out his normal life, and the Estate of James Clifton Barnes has sustained medical or funeral expenses that have become a charge against his Estate and/or Decedent's survivor has incurred said medical and funeral expenses.

WHEREFORE, Plaintiff, Patricia Juanita Wate, individually and as Personal Representative of the Estate of James Clifton Barnes, demands judgment against FDEP and FWC for compensatory damages, including those recoverable under the Florida Wrongful Death Act and Section 768.21, Florida Statutes, hedonic damages, attorneys' fees, costs, and such other and further relief as this Court deems just and proper. Plaintiff further demands trial by jury on all issues so triable.


Keith M. Carter, Esq.
Morgan & Morgan, P.A.
One Tampa City Center
201 North Franklin Street
7th Floor
Tampa, Florida 33602
kmcpleadings@forthepeople.com
pwbrown@forthepeople.com
jcurry@forthepeople.com
dmitchell@forthepeople.com
Florida Bar #:  500364
Attorney for Plaintiff