UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA JUANITA WATE,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF JAMES CLIFTON BARNES,
DECEASED,

    Plaintiff,

v.                                  Case No. 8:14-cv-1196-T-33TBM

JOSEPH TACTUK, ET AL.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Kenneth Kubler's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 62) and Defendant Bob Gualtieri's[1] Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 63), both filed on November 21, 2014. Plaintiff Patricia Juanita Wate filed responses in opposition to the Motions on December 18, 2014. (Doc. ## 80, 81). With leave of Court, Deputy Kubler and Sheriff Gualtieri each filed a reply to Wate's responses on January 15, 2015. (Doc. ## 82, 83). For the reasons that follow, the Court grants the Motions in part.

---

[1] Although Deputy Kubler has been sued in his individual capacity, Sheriff Gualtieri is sued in his official capacity as Sheriff of Pinellas County, Florida.

I. **Background**

Wate initiated this action on March 19, 2014, in state court. (Doc. # 2). Defendants removed the case to this Court on May 20, 2014, contending that this Court has federal question jurisdiction over this action. (Doc. # 1). Deputy Kubler and Sheriff Gualtieri each filed a Motion to Dismiss on July 28, 2014. (Doc. ## 34-35). This Court granted Defendants' Motions to Dismiss in part and directed Wate to file an Amended Complaint on or before November 3, 2014. (Doc. # 60). Wate filed her Amended Complaint on November 4, 2014. (Doc. # 61).

According to the Amended Complaint, on March 17, 2012, James Clifton Barnes traveled to Honeymoon Island with his aunt, Paula Yount. (Id. at ¶ 17). Barnes and Yount subsequently entered the water, as it was "Barnes' intention to cleanse his spirit by baptizing himself in the water." (Id. at ¶ 18).

> Once in the water, Mr. Barnes sat on the sea floor up to his chest and, with the assistance of Ms. Yount, submerged himself underwater several times by putting his arms over his head while sitting, swinging backward, going underwater and then returning to his sitting position. He also shouted religious phrases during this process.

(Id.).

During this time, Joseph Tactuk[2], who was at all relevant times a law enforcement officer with the Florida Department of Environmental Protection, arrived on the scene. (Id. at ¶ 19). Yount left the water to speak with Officer Tactuk and explained that Barnes was engaging in a "self-baptism." (Id.). Officer Tactuk advised Yount that Barnes had to get out of the water. (Id. at ¶ 20).

Thereafter, Barnes was handcuffed and removed from the water by his legs. (Id. at ¶ 23). At this time, Barnes was "handcuffed in an awkward and painful way, whereby Mr. Barnes['] hands were cuffed together at the center of his back, with his left elbow facing down, his left hand facing up, his right elbow facing up and his right hand facing down, resembling a figure eight." (Id.).

Meanwhile, Deputy Kenneth Kubler, of the Pinellas County Sheriff's Office (PCSO), arrived on the scene in his patrol boat "and proceeded to participate in and continue the use of excessive force, restraint and pain compliance methods against Mr. Barnes that had been initiated by Officer Tactuk."

---

[2] Officer Joseph Tactuk was also listed as an individual Defendant in this case. However, the case was "settled as to Defendant[] Tactuk," as indicated in the Mediation Report. (Doc. # 38). Therefore, Officer Tactuk was dismissed from the action. (Doc. # 39).

(Id. at ¶ 25). Wate submits that Barnes ultimately had "difficulty breathing, was spewing a large amount of blood from his mouth with every breath and was barely moving." (Id. at ¶ 30).

Nevertheless, Deputy Kubler deployed his taser on Barnes several times, "until Mr. Barnes was unconscious, not moving or breathing and was blue in color." (Id.). Once Barnes lost consciousness, Wate alleges that bystanders tried to resuscitate Barnes and notified Deputy Kubler "of the need to provide airway ventilation as well as chest compression." (Id. at ¶ 32). Wate submits that Deputy Kubler advised the bystanders that he had "an apparatus capable of delivering airway ventilation while creating a barrier to backflow of air or bodily fluids" in his patrol boat. (Id. at ¶ 33).

According to Wate, Deputy Kubler failed to render emergency aid while Barnes was in custody. (Id. at ¶¶ 34-35). On March 19, 2012, Barnes was pronounced dead as a result of asphyxia, blunt trauma, and restraint. (Id. at ¶ 36).

The Amended Complaint sets forth the following claims:

Count I: Battery/ Excessive Force (Against PCSO)

Count II: Common Law Negligence – Zone of Risk (Vicarious Liability – Against PCSO)

Count III: Violation of the Fourth Amendment (Against Deputy Kubler)

4

    Count IV: Violation of the Fourteenth Amendment (Against Deputy Kubler)

    Count V: Violation of the Fourth Amendment (Against PCSO)

    Count VI: Violation of the Fourth Amendment, Failure to Train (Against PCSO)

    Count VII: Violation of the Fourteenth Amendment (Against PCSO)

(See Doc. # 61). Defendants filed the present Motions on November 21, 2014, which are ripe for the Court's review. (Doc. ## 62-63).

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

> will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. Deputy Kubler's Motion to Dismiss

#### A.  Fourth Amendment Claim

Count III of the Amended Complaint alleges that Deputy Kubler deprived Barnes of his Fourth Amendment right "to be secure in his person from the use of excessive force/and to be free from unreasonable search and seizure of his person." (Doc. # 61 at ¶ 64). However, the related filings and subsequent contentions make it unclear as to whether Wate's present excessive force claim involves allegations related to

6

an unlawful search or seizure of Barnes. (See Doc. ## 61, 80). This distinction is critical to the Court's analysis, because "[u]nder [Eleventh Circuit] law . . . a claim that any force in an illegal . . . arrest is excessive is subsumed into the illegal . . . arrest claim and is not a discrete excessive force claim." Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000). Alternatively, "a claim for excessive force during a legal stop or arrest is a discrete claim." Id.

Accordingly, Deputy Kubler's Motion is granted as to this claim. Wate is directed to refile a second amended complaint, in which she clarifies whether (1) the Fourth Amendment excessive force claim incorporates an allegation that Deputy Kubler unlawfully searched or seized Barnes or (2) the Fourth Amendment excessive force claim is independent from Barnes' seizure. Wate's second amended complaint is due on or before **March 10, 2015.**

### B.   Fourteenth Amendment Claim

Count IV of the Amended Complaint provides that Deputy Kubler violated Barnes' Fourteenth Amendment rights due to his allegedly deliberate indifference to Barnes' serious medical needs. (See Doc. # 61). Deputy Kubler argues that Wate has not stated a claim of deliberate indifference under the Fourteenth Amendment, because Wate "does not claim that

7

Deputy Kubler either did nothing or delayed in responding." (Doc. # 62 at 10). To establish a claim for "deliberate indifference to a substantial risk of serious harm," a plaintiff must meet both an objective and a subjective standard. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "To satisfy the objective component, the plaintiff must show a deprivation that is, 'objectively, sufficiently serious,' which means that the defendants' actions resulted 'in the denial of the minimal civilized measures of life's necessities.'" Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) (quoting Farmer, 511 U.S. at 834).

As to the objective component of the test, Count IV of the Amended Complaint states that "[b]ased upon [the] outward appearance of Mr. Barnes which included his complete inability to breathe and having been informed by a firefighter of the need for airway ventilation, Deputy Kubler knew of the serious medical needs of Mr. Barnes for airway ventilation as a part of complete cardiopulmonary resuscitative efforts." (Doc. # 61 at ¶ 74). Therefore, Wate's allegations satisfy the objective component of this test.

In addition to meeting this objective standard, a plaintiff must establish that the defendant had a "sufficiently culpable state of mind." Cottrell, 85 F.3d at

8

1491 (quoting Farmer, 511 U.S. at 834). That requisite "state of mind is one of deliberate indifference to inmate health or safety" – "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other." Id. (quoting Farmer, 511 U.S. at 836) (internal quotation marks omitted). Pertaining to the subjective component, Wate submits that "[n]otwithstanding Deputy Kubler's knowledge of Mr. Barnes' serious medical needs, he made the conscious, deliberate, purposeful and indifferent decision to deprive Mr. Barnes of airway ventilation by failing to utilize available equipment specifically designed to deliver airway ventilation in connection with cardiopulmonary resuscitative efforts." (Doc. # 61 at ¶ 75). This contention – particularly when coupled with the allegation that Barnes turned "blue in color" (Id. at ¶ 30) among others outlined above – satisfies the subjective component of this test. Accordingly, Wate has sufficiently alleged a Fourteenth Amendment violation and Deputy Kubler's Motion is denied as to this claim.

**C.   Qualified Immunity**

Deputy Kubler argues that he is entitled to qualified immunity and is, therefore, immune from suit. (See Doc. # 62). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be,

9

as it was in this case, raised and considered on a motion to dismiss." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

In the context of a motion to dismiss, "the Court determines whether the Complaint alleges a clearly established constitutional violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting its review to the four corners of the complaint." Hatcher ex rel. Hatcher v. DeSoto Cnty. Sch. Dist. Bd. of Educ., 939 F. Supp. 2d 1232, 1237 (M.D. Fla. 2013) aff'd sub nom. Hatcher ex rel. Hatcher v. Fusco, 570 F. App'x 874 (11th Cir. 2014) (citing Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). In other words, when qualified immunity is raised in a motion to dismiss, the motion may be granted **only** "if the complaint fails to allege the violation of a clearly established constitutional right." Drury v. Volusia Cnty., No. 6:10-CV-1176-ORL-28, 2011 WL 1625042, at *6 (M.D. Fla. 2011) (citing St. George, 285 F.3d 1334, 1337 (11th Cir. 2002)) (internal quotation marks omitted).

As detailed above, Wate has properly alleged the violation of Barnes' constitutional rights under the Fourteenth Amendment. See Id. Therefore, the Court finds that

10

Deputy Kubler "is not entitled to the defense of qualified immunity at this stage of the case."[3] St. George, 285 F.3d 1334, 1338. However, the Court notes that the Eleventh Circuit "has held that qualified immunity is a question of law that may be generally asserted (1) on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Rule 12(c); (3) on a summary judgment motion pursuant to Rule 56(e); or (4) at trial." Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002). In the event Deputy Kubler chooses to raise the defense further in the proceedings, the Court will address the issue of qualified immunity at that juncture.

### IV. Sheriff Gualtieri's Motion to Dismiss

#### A. *Monell* Claims

PCSO's[4] Motion argues that Wate has not sufficiently stated a claim under any of the theories for liability set

---

[3]  Having granted Deputy Kubler's Motion as to Wate's Fourth Amendment claim under the Federal Rule of Civil Procedure 12(b)(6) analysis, the Court does not reach Deputy Kubler's argument that he is entitled to qualified immunity as to this claim.

[4]  Although the Amended Complaint names Sheriff Gualtieri as a Defendant in his official capacity, Wate's claims reference PCSO. For clarity, this Order refers to PCSO as the Defendant. (See Doc. # 61).

11

forth in Monell v. Department of Social Services, 436 U.S. 658 (1978). (See Doc. # 63). A plaintiff seeking to impose liability on a governmental entity under § 1983 must identify a "municipal 'policy or custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997). A plaintiff may establish liability pursuant to a municipal policy when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). Alternatively, "to prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991)(quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)).

### i. Fourth Amendment Claims

In order for PCSO to be liable, Wate must first demonstrate that Barnes' constitutional rights were violated. Kinsey v. City of Opp, Ala., 50 F. Supp. 2d 1232, 1238 (M.D.

Ala. 1999). As described above, the Court finds that Wate has inadequately alleged a violation of Barnes' Fourth Amendment rights. Therefore, PCSO's Motion is granted as to Counts V and VI of the Amended Complaint. However, Wate has until and including **March 10, 2015**, to file a second amended complaint addressing this shortcoming to the extent possible.

### ii. Fourteenth Amendment: Widespread Persistent Practice and Failure to Train

PCSO submits that Wate's Monell claim stemming from alleged Fourteenth Amendment violations fails to "identify any policies, customs, procedures, or training of [PCSO] with respect to first aid, recuse breathing, the performance of CPR, or the use of barrier devices." (Doc. # 63 at 13). PCSO further contends that Wate again provides no factual support "with respect to the widespread practices or incidents other than this one where [PCSO's] deputies unconstitutionally failed to do mouth-to-mouth respiration despite performing CPR and actively participating in resuscitation efforts." (Id.).

In the present matter, Wate contends that "[t]hrough General Order 13-303 the PCSO was aware of the substantial likelihood that members of the public would require first aid by its deputies while awaiting emergency medical services as

a consequence of symptoms resulting from tasering." (Doc. # 61 at ¶ 119). Wate further submits that PCSO was on notice of the need to train, because "[b]y equipping its marine patrol boat's barrier devises to provide airway ventilation [as] part of cardiopulmonary resuscitation, PCSO knew of the substantial likelihood that its marine patrol deputies would be required to competently administer airway ventilations as a part of cardiopulmonary resuscitation." (Id. at ¶ 120).

"[F]or a local governing body to be liable, (1) there must have been a constitutional violation, and (2) the violation must have been committed pursuant to a policy or custom." Kinsey, 50 F. Supp. 2d at 1238. As previously discussed, the Court found that Wate has adequately pled a violation of Barnes' Fourteenth Amendment rights. Moreover, Wate argues that PCSO's failure to train was the "moving force behind Deputy Kubler's failure to address Mr. Barnes' serious medical needs." (Id. at ¶ 123). Therefore, the Court is satisfied that Wate has alleged that the constitutional violation occurred pursuant to a policy or custom. Accordingly, PCSO's Motion to Dismiss is denied as to this claim.

**B.   State Law Claims against Sheriff Gualtieri/PCSO**

**i.   Battery/Excessive Force**

14

In Count I of the Amended Complaint, Wate states that "Deputy Kubler intentionally battered James Clifton Barnes, in the course and scope of his employment with the PCSO and resulted in the death of James Clifton Barnes." (Doc. # 61 at ¶ 40). Wate contends that Deputy Kubler's acts and omissions "were not done in bad faith or with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights and safety of James Clifton Barnes." (Id. at ¶ 41). Wate outlines the events set forth above and concludes that Deputy Kubler's actions, although within the scope of his employment, were "blatantly out of proportion to any legitimate law enforcement objective and more than necessary to overcome the resistance, if any, offered by Mr. Barnes." (Id. at ¶¶ 40, 42-47). For instance, Wate submits:

> Deputy Kubler's delivery of five (5) separate taser strikes after Mr. Barnes was restrained by handcuffs [and] restrained by the combined weight of Officer Tactuk and Deputy Kubler and was physically incapable of providing meaningful resistance, was out of proportion to any legitimate law enforcement objective and more force than necessary to overcome the resistance provided by Mr. Barnes, if any.

(Id. at ¶ 47). The Court finds that the allegations included in the Amended Complaint are sufficient to (1) overcome PCSO's

15

Motion and (2) put PCSO on notice of the claims against it. Accordingly, PCSO's Motion is denied as to this claim.

### ii. Common Law Negligence – Zone of Risk (Vicarious Liability)

In Count II of the Amended Complaint, Wate contends that Deputy Kubler "placed Mr. Barnes in a zone of risk by undertaking to retrieve first aid equipment and administer first aid, and increasing the risk of harm to Mr. Barnes by failing to use the emergency first aid equipment, and/or by inducing third parties who would have otherwise rendered aid to forebear from doing so." (Id. at ¶ 56). Finally, Wate submits that, as a direct and proximate result of Deputy Kubler's negligence, Barnes "suffered severe physical injuries that ultimately resulted in his death." (Id. at ¶ 58).

The Court finds that Wate's allegations are adequate to sustain this claim and overcome PCSO's claim of sovereign immunity at this preliminary juncture. See, e.g. Wallace v. Dean, 3 So. 3d 1035, 1040 (Fla. 2009) ("The undertaker's doctrine applies when law-enforcement officers respond, actually engage an injured party, and then undertake a safety check, which places the injured party in a 'zone of risk' because the officers *either* increased the risk of harm to the

16

injured party *or* induced third parties – who would have otherwise rendered aid – to forebear from doing so.") (emphasis in original).

Upon consideration of Deputy Kubler and Sheriff Gualtieri's Motions and the related filings, the Motions are granted in part as set forth herein. Wate has until and including **March 10, 2015**, to file a second amended complaint.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Kenneth Kubler and Bob Gualtieri's Motions to Dismiss Plaintiff's Amended Complaint (Doc. ## 62, 63) are **GRANTED IN PART** as set forth herein.

(2) Plaintiff Patricia Juanita Wate is directed to file a second amended complaint on or before **March 10, 2015.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of February, 2015.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record